Case number 165531, United States of America v. Geremy Atkins. Arguments not to exceed 15 minutes per side. Mr. O for the appellant. Good morning. Appellant is requesting three minutes for rebuttal. Fine. Thank you. Please proceed. If you wish to begin, we would appreciate it. May it please the court, good morning. My name is Peter O. I'm counsel for Geremy Atkins. We are raising a Batson claim on appeal. It is on the basis of race. In January of this year, Geremy Atkins, with me by his side, proceeded to jury trial in the Western District of Tennessee. The charge was for being a convicted felon in possession of a firearm. The jury voir dire began that morning. As is the custom in that court, Judge Folks began with his own set of voir dire questions. They focused on each prospective juror's employment, work history, and if they were married as well, how many children that they had. As the morning progressed, each prospective juror, one by one, gave answers to these preliminary questions, explaining where they worked, if they worked, and if they were married, how many children that they had. They got down and they struck five African-American jurors. That's correct, Your Honor. Were there any African-American jurors on the actual jury? There were, Your Honor. There were actually five African-American jurors who did ultimately serve, seven Caucasian jurors, and to the best of my knowledge, no other races or ethnicities. Does the record in this case indicate the names and races of the jurors? In other words, I know that there are some comparators that are involved here, and do we know their races? We do know their races, Your Honor. It's in the record so that not just you know it, but that we know it? It's actually not in the record. I couldn't find it. Three jurors, Jim Stewart, Sarah Williams, and Jennifer Abshire, what were their races? They were Caucasian, Your Honor. Okay. I think as far as the transcript itself is concerned, I think I could have done a much better job identifying next to each name the ethnicities and races. Well, you didn't even indicate in the brief what the race of these three people were. I understand, Your Honor. They are, the three individuals, Jim Stewart, Jennifer Abshire, and Sarah Williams, were Caucasian. All right. As we proceeded, after the fifth and last strike against an African-American juror based on a peremptory strike, Mr. Atkins raised a Batson challenge at that time. Why didn't he raise a Batson challenge earlier? I think to make sure that there was a prima facie case, we were most comfortable after the fifth juror, the final juror that had been struck was African-American. At that juncture, I think it was our assessment that there was sufficient evidence at that point to make out a prima facie challenge and to bring the Batson claim. Was the fifth juror Mr. Dandridge? He was. So you were not challenging, in effect, or were you, the first four strikes? Did you essentially waive the right to challenge those? We did. I think maybe waive would be too strong a word, but I think the focus of our inquiry before the district court and the focus of our inquiry before this court is on the last final strike against Antonio Dandridge. As the Batson inquiry progressed, the district court correctly held in our estimation that we had made a prima facie showing. The burden, therefore, shifted to the government. At that point, then, the government began to proceed through each of their peremptory strikes and offer race-neutral explanations for each stricken juror. For each stricken juror or for just Mr. Dandridge? For each stricken juror, that was the basis of our Batson challenge, and that's also in the briefing and the record as well, that they went through each one, one by one. But then you were challenging the other four. We were challenging the Batson. I think this might be the best way to put it. We were challenging the strikes on the basis of race on the Batson. All five? All five. But the focus of our inquiry undoubtedly was on Antonio Dandridge, both in the district court and in this court. With respect to Antonio Dandridge, here were ... Are you saying that there wasn't any reason to ... There was a race-neutral explanation for the other four strikes? There were race-neutral explanations for the other strikes which we have ultimately conceded. It's on the fifth strike. How does that impact your argument that Dandridge alone was not race-neutral? I think it impacts it slightly but not fully. First, I think it's well settled that even one strike on the basis of race is unconstitutional and can sustain the Batson challenge. Although the government was able to offer race-neutral explanations for the other four that we could not ultimately rebut, in other words, that we could not demonstrate fully that they were pretextual, the fact that there were five strikes all on the basis ... Let me rephrase that. All against African-American jurors does, first of all, make our prima facie case, which also then supports our efforts to show that the fifth strike against Antonio Dandridge was pretextual. Here now ... Did you show a comparison between Mr. Dandridge and the three individuals mentioned by Judge Clay, Stewart, Williams, and Absher? Did you make that comparison in the district court? We did not, Your Honor, and that was an omission on my part. I think the record ... I think the law is also equally clear that this court can do a retrospective analysis of the Batson challenge and do its own comparison of Antonio Dandridge and similarly situated jurors who were ultimately impaneled. To directly answer the court's question, that was an omission on my part before the district court, which I am raising for the first time here in this court. Here now are the three proffered explanations that the government gave for striking Antonio Dandridge. First, I'll just quote directly from the transcript. The government stated, Mr. Dandridge is just one of those people that I don't get a good feeling about. The government on appeal asserts this as a legitimate race-neutral explanation. Our response is actually fairly straightforward. When we look at Batson, the decision itself, it states that in order to carry its burden of production, the government must state in clear and reasonably specific terms what the reasonable race-neutral explanation is. Are there cases that say that it's not adequate to say I just don't have a good feeling about somebody? Not that we found, but I think if we compare them to other cases where we talk about demeanor, there is specificity that the courts hang their hat on in those cases, whether it's staring at counsel, whether it's arms folded, whether it's perhaps falling asleep while you're in your seat. If the government had actually supported this sort of gut feeling with those types of demeanor evidence, that might be a different case. But I think just stating that he did not have a good feeling about Antonio Dandridge, that standing alone would be insufficient in our estimation. The second. When you're out counsel, don't you ever get the feeling that some juror just doesn't like me? I do sometimes get that feeling. You can't explain it, but you just get the feeling? I do sometimes get that feeling, Your Honor, but I think when we get to a Batson challenge, and the defense or in our case, we have made that prima facie case, the burden of production shifts to the government, and they have to do more, I think, at that point than to say, hmm. But then the prosecutor went on. Yes, Your Honor. Other than just I just didn't get a good feeling. Absolutely. The second reason was this. The government stated he didn't have a very long employment history, which I don't usually like. I prefer people that have a stable background. Before the district court, Mr. Adkins, with me representing him, made the argument that, you know, Judge, if you really actually look at it, he has a fairly stable background. He's been in his job at ServiceMaster for four months, and he was at Krispy Kreme for a year before that. So on balance, that's actually a relatively good work history, not bad. And the work history that the district judge asked for was for what time period? Somehow I have the impression from preparing this case that it was just a year. That's my recollection as well, Your Honor, and that's just based on my memory of the briefing that we did. But I don't recall specifically at this time. It was. It was? Yeah. Thank you. Appreciate the assistance. So in other words, this was a complete answer, four months here, whole rest of the time in question somewhere else. Yes, Your Honor. Krispy Kreme. Excuse me? Fried donuts for Krispy Kreme is what he said. Yeah, he was a cook for Krispy Kreme. He said he fried donuts. We also have Gibson's in Memphis. That would have been a good alternative too. The district court rejected my argument about having a relatively good work history. Before this court, we are raising an additional argument, and admittedly for the first time. We are asking this court to take a retrospective analysis and compare Antonio Dandridge to Jennifer Absher. Yes, Your Honor. But didn't they also give another explanation? They did. About he was probably not going to be able to pay attention because he had nine kids. Yes, Your Honor, and that's the third one, and I'll address that now if the court wants or. . . I don't want to interrupt you. I just thought you said there were only. . . Before you go into that, part of the problem about the work history was the court, as I understand, didn't inquire as to why he had changed jobs, whether there was some employment instability or he took the new job for higher pay or whatever the reason might have been. Right. I don't think there was follow-up inquiry that thoroughly probed the reason for the change or the circumstances of the change, whether it was a better opportunity or worse. There was virtually no follow-up. That's correct, Your Honor. So your yellow light is on, and your time is going to be coming to a close. I had one question, which was that your client got a 37-month sentence, and how many months has he served so far? He has served. Let me just make sure I think through this clearly. His bond was revoked once the guilty plea was rendered. That was January 15th, approximately, of this year. So he had served about 11 months at this juncture, Your Honor. And the relief that you request, if you win on your Batson challenge, is a new trial? It is, Your Honor. I don't know if any judge has any further questions. And your red light is now on. You have your rebuttal time. Thank you. Thank you. Thank you. Good morning. May it please the Court. My name is Elizabeth Rogers on behalf of the United States. This Court should affirm the District Court's rejection of Appellant's Batson challenge at trial and deny his request for a new trial for two reasons. First, there is no affirmative obligation on behalf of a District Court judge to conduct a comparative juror analysis if neither party argues for one at trial. And second, the District Court judge in this case properly moved through all three phases of the Batson hearing at trial. Appellant's entire basis for appeal is that the District Court judge erred at the third phase of the Batson hearing concerning a single juror, Antonio Dandridge. Appellant concedes and the government agrees that the District Court judge properly moved through the first two phases of the Batson hearing. First, that the defendant at trial established a prima facie case. And second, that the government produced race-neutral reasons justifying the strike, primarily the unstable employment history and the child care concerns that the government attorney had. Therefore, the entire appeal rests upon this third phase of the Batson hearing. The defendant, the Appellant, I'm sorry, contends that the District Court judge erred by failing to conduct a comparative juror analysis at trial. What if the information was patently before the Court? The Court had the benefit of the jury questionnaires and some of that would have, with regard to the white jurors with whom Mr. Dandridge was being compared, would have had the information regarding the employment history and how many children they had, since that was the basis for the peremptory challenge against Mr. Dandridge. If that information was in front of the judge and the judge didn't recognize the Batson challenge, even though all the information was there and made the wrong decision in comparing the black juror with the white juror, we still would have a good Batson challenge to look at. At least all the evidence for the challenge would have been in front of the Court. And you would think that the Court, with the benefit of the jury questionnaires and other information, would have asked the appropriate questions of the jurors, which the Court in this instance didn't seem to do. How would you respond to that? To that, Your Honor, I'd say that it's actually the defendant's burden, the party opposing the strike at trial, to persuade the Court that any proffered race-neutral reasons given by the government were pretextual. That burden is on the party opposing the strike. That's something this Court and the Supreme Court have said many times. But how much persuasion is needed if the information is patently before the Court? Well, what this Court has actually said, for instance, in United States v. Cecil in 2010, that even if these questions that were asked, if the district judge is aware that these questions were asked, these employment-alleged similarities have been raised, if the defendant or the party opposing the strike does not argue for a comparative juror analysis at trial, then there is no affirmative obligation on the district court judge to on the record conduct one. But it doesn't keep us from doing one if the information is there. Is that correct? Not entirely. That would not be the government's position. The Supreme Court has conducted in the past retrospective comparative juror analyses. However, they have noted in Snyder v. Louisiana in 2008 that those are generally disfavored. I'll actually quote from the Court. Well, but here we've got, I think Judge Clay is bringing it up, here you've got Mr. Dandridge, and they say he's had a checkered employment history. He's got nine kids, and that'll keep him from really paying attention to the evidence. Well, your trial counsel, you didn't try this case, did you? I was second chair, Your Honor, it was my first case. But the first chair, whoever was done to void the error, didn't ask Mr. Dandridge anything about that, did he? No, Your Honor, and again, the burden... I know, but if that's enough of a concern, don't you think that the prosecutor should have asked that? Mr. Dandridge, let me ask you, you've got nine kids. Who's going to take care of these kids when you're sitting on a jury? The government certainly could have asked that question, and could have. But it's a concern to the government. But if there were other jurors who had multiple kids, why wouldn't the same concern apply to them? Again, I hesitate to begin to argue these alleged similarities and differences, because I would not agree that now is the appropriate time to make those comparisons. But if we were going to, I would posit that the combination of the child care concerns and the unstable employment history, coupled with the demeanor of the juror and that the government attorney said, I didn't get a good feeling about him. It was the combination of all of those factors that made the strike appropriate in this case. Okay, so with respect to the three purported comparators, Stewart, Williams, and Absher, none of those three had both the work history plus multiple children? No, Your Honor, and this argument the defendant is making today, that appellant is making today, is very similar to the argument that the defendant appellant made in United States v. Cecil. And this court looked at that and said that no, if the appellant, the party opposing the strike, did not affirmatively argue for a comparative juror analysis at trial, then what would not be appropriate? And the Cecil court got it right for two reasons. First, it's too onerous a burden to place on a district court judge to sua sponte conduct a comparative juror analysis if neither party argues for one, and second, again, the burden remains on the party opposing the strike throughout all three phases of the Batson hearing. This case shows the perfect example of why it's just too great a burden to ask a district court judge to sua sponte conduct an analysis like this. It doesn't seem to me that it's that great of a burden, frankly. The district judge has been presented with the defendant's challenge to the government's challenge to Mr. Dandridge. And the only reasons are these three reasons. Why shouldn't a district judge ask the prosecutor in this situation, well, have you been consistent all along in challenging, giving peremptory challenges for people who have a so-called checkered work history, which is simply that the man changed his job during the one year in question. I mean, that's a really arguably problematic argument here. And then the eight children, do we know whether Mr. Dandridge was married? Yes, he was married. He did say that. So there were two parents who could be taking care of the children while he was there, and he works. So if he's working, he can't be taking care of his eight kids while he's working. Those are all areas of exploration that the defendant at trial had the burden to explore in order to rebut the government's proffered race-neutral reasons. The burden was on the defendant in this case to explore those alleged similarities in full to present them to the district court judge. Well, what if the reasons facially are not race-neutral when you see that white jurors had children and children of color? Employment histories that had recently changed and all that, I mean, all that's patently before the court. And there's not a lot of exploring that's needed unless, if the only reason that Mr. Dandridge is being taken off is the matter of the children and his work history. And there was nothing put before the court to suggest that his work history was unstable. The government was the one suggesting that the work history was unstable, but there was nothing before the court suggesting that other than the fact that he had changed jobs. That's true, Your Honor. Again, I'll say the totality of all of those factors is what made this strike appropriate. And it kind of gets to the heart of the matter that the trial court judge's ruling on this is entitled to great deference, because the trial court judge is the one... That's not true. That's not what the case law says. We're supposed to do a de novo review in these Batson cases. A de novo review if this is a mistake of law. Typically, however, the court, for instance, in Torres Ramos and McAllister and O'Donnell and in Cecil, looked at this under clear error. Whether this Batson challenge was appropriate, that's usually a clear error review. There is some confusion as to whether because the appellant here is arguing that there was a mistake of law, perhaps, because of this failure to conduct a comparative juror analysis, that would be de novo review. Your argument is that we should utilize plain error review. First, that this court should utilize plain error review because of the defendant's failure to raise this specific argument at trial. That's what happened in United States v. Jackson in 2003. This court said that, in part, the defendant appellant's failure to put forth a rebuttal and argue for a comparative juror analysis at trial meant that that failure to rebut and raise that argument allowed this court to look at it under plain error. But didn't the defendant say, judge, this employment history looks fairly consistent? Yes, the defendant did make a rebuttal at trial, but the failure to make this particular argument at trial, the government's position would be that plain error review is still appropriate. Would we be applying plain error review only to the comparator issue that wasn't raised? Because he does raise a challenge to Dandridge. So the only thing that we should have plain error review on should be the comparator issue. Am I right or wrong? The issue of whether the strike of Mr. Dandridge was sufficiently race neutral. Whether there are comparators who were white who were not struck. Therefore, the implication being that the comparators who were similar comparators show the bad motive or at least the Batson violation. Correct. But there is deference. This court has said repeatedly that the factual findings of the trial court judge during a Batson hearing are entitled to great deference. And that's those credibility determinations that the district court judge has to make. Which findings did Judge Foulkes make? Well, there are an indefinite number of credibility determinations that Judge Foulkes made in this case. First, it was Judge Foulkes who had the opportunity to observe Mr. Dandridge's demeanor during voir dire. It was Judge Foulkes who had the opportunity to assess... He found that the prosecutors race neutral... Not explicitly, Your Honor. There weren't any explicit findings of fact. But that bleeds into the credibility determinations that Judge Foulkes made. Judge Foulkes made the credibility determination based on the prosecutor's demeanor and the prosecutor's race neutral reasons. And the district court... Absolutely. In Batson Challenge cases, there is a lot of case law that suggests that the trial court judge being able to assess the credibility of the prosecutor or the party making the strike, defending the strike. That those are important credibility determinations on behalf of the district court judge. And in this case, the district court judge did make those credibility determinations based on Mr. Carriker's demeanor. And did make credibility determinations when Mr. Carriker said, I just didn't get a good feeling about Mr. Dandridge. What did the district judge say? So the thing that I have found is on 176 to 177 in the page ID, that the court says, I will allow lawyers obviously to follow up on things. And it does seem to me that it is a sufficient answer with regard to Mr. Dandridge and his work history given everything else about him. So I'm having one more sentence, but it doesn't seem to me to say anything about credibility finding. No, no. There is no explicit on the record adjudication of those. Simply that those credibility determinations had to go into Judge Folks' conclusion that the Batson Challenge should be denied. That credibility determination is entitled to great deference from this court. And if this court decides that there was error in failing to conduct a comparative juror analysis, then the government's position would be that a remand for an additional hearing is most appropriate here. That's what this court did in Torres Ramos and in United States v. McAllister in 2012. In those cases, the Sixth Circuit remanded to the district court judge for additional findings and additional on the record development. My time is up if the court has any other questions. So to ask the question that your opponent just left us with, why shouldn't we, if we thought that you had raised sufficient concerns about the Batson issue, why shouldn't we remand to the district judge to make further findings in light of the concerns and the fact that a comparator analysis wasn't done? I think there are two potential remedies, at least from our view in this case. If the court believes that additional fact-finding is necessary, that would be the appropriate remedy, to remand to the district court for further fact-finding, for the district court to assess whether a new trial is warranted. But there are also other cases, for example, Miller L. v. Dredke or Snyder v. Louisiana, where based on a retrospective analysis, the Supreme Court itself found sufficient evidence to determine that there was pretext. And so if this court were similarly able to determine, based on the comparator analysis, based on the entire record, that there was pretext with regard to Antonio Dandridge, this court itself could reverse, and this court could reverse. And remand for new trial. So there are two potential remedies. And your opponent relied heavily on the Cecil case. How would you distinguish it or indicate that she's not correct in your view? The Cecil case was where the parties did not ask for a comparator analysis, the district court did not undertake one, and the Sixth Circuit stated that the district court's failure to undertake the comparator analysis was not, quote, necessarily reversible in this case. It was an intentional error. The Sixth Circuit then went on to do its own comparator analysis. And here was the facts in Cecil. The defendant was an officer of the Nashville Police Department. One of the jurors was, the stricken juror, the challenged juror, was a wife of a long-standing, high-ranking officer in the Nashville Police Department. So what the Sixth Circuit found was that this individual that was stricken was actually not comparable to anyone at all, that she was truly unique. Here are some of the quotes. When questioned as to why the government struck Sherilyn Carter, the government's lawyer responded that it was because her husband was a high-ranking officer in the Metro National Police Department. None of the remaining jurors was tied this intimately to the MNPD. Later on, Cecil contends that in light of these discrepancies, Sweatt was, if anything, more likely to know about the people and policies of the NNPD. So Cecil really was a situation where we had a defendant that was part of the Nashville Police Department and a prospective juror, African-American juror, who was married to a high-ranking officer and therefore really could have had very intimate knowledge of it. Was the point in Cecil that the Court of Appeals could do a comparator analysis even though normally it was not supposed to do that if there had not been a request in front of the district court? Is that what you're saying the point of Cecil is? The point of Cecil is that, one, the district court does have an affirmative duty to do a comparator analysis if that analysis is readily available to it. It's failure to do so doesn't constitute necessarily reversible error, however, because this court can undertake that own analysis. And in Cecil, once it undertook that analysis, which it was appropriate for it to do, it found that there actually was no true comparator. But should we do a comparative analysis of the issue that you didn't even raise before Judge Faulks? The answer to that, to my benefit, is yes. But you didn't mention anything about the child care business as your argument went to the job. No, I actually made a child care argument as well, if I recall, and I'm subject to being corrected on this. If I recall correctly, I stated that Antonia Dandridge was married. And I think I raised that issue as a possible argument for why child care would not be an issue, that there would be someone else to assess. And if I'm mistaken on that, I will definitely advise the Court of it.